IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| LUCAS NELSON and SHANNON ROBINSON NELSON, | ) ) ) | CV 11-162-M-DWM |
| Plaintiffs, | ) ) | |
| vs. | ) ) | ORDER |
| HARTFORD INSURANCE COMPANY OF THE MIDWEST, SAFECO INSURANCE COMPANY OF ILLINOIS, IRMA SULLIVAN, individually and JOHN DOES A, B and C, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Before the Court is the motion of Defendant Hartford Insurance Company of the Midwest ("Hartford") to disqualify Plaintiffs' counsel, Tracey Morin. Dkt # 31. The parties argued the motion at a hearing on March 7, 2012. Tracey Morin

1

appeared for Plaintiffs. Ian McIntosh of Crowley Fleck appeared for Hartford. Having considered the parties' filings and arguments, the Court is now prepared to rule.

## I. Background

This is a bad faith insurance action. The underlying liability action arose when Plaintiff Lucas Nelson was injured in a motor vehicle collision on August 15, 2004. The other driver was insured by Defendant Hartford and Defendant Safeco Insurance Company of Illinois ("Safeco"). The parties apparently reached a settlement agreement, and now Plaintiffs allege Defendants violated Montana's Unfair Claim Settlement Practices Act and Unfair Trade Practices Act.

Plaintiffs' current counsel, Tracey Morin, also represented Plaintiffs in the underlying liability action. Hartford moves the Court to disqualify Morin under Rule 3.7 of the Montana Rules of Professional Conduct and Rule 83.5 of the Local Rules of Procedure for the District of Montana. At the hearing, Hartford specifically limited its request to disqualify Morin from acting as Plaintiffs' counsel at trial and from conducting depositions.

Hartford argues Morin is a necessary witness in this matter because "[her] decisions and strategy in the underlying litigation directly impacted the litigation strategy employed by Hartford's insured." Dkt # 32, 7. Hartford represents it

"will necessarily question Ms. Morin about her representation of the Nelsons in the underlying litigation." Id. Hartford also argues that Plaintiffs made Morin a necessary witness by alleging that attorneys and other agents of Hartford and Safeco engaged in misconduct directed at Morin. For example, the Second Amended Complaint states:

> 94. Throughout litigation, The Hartford and Safeco Insurance Company' counsels threatened sanctions against the Plaintiffs and the Plaintiffs' counsel in intimidation and leveraging attempts.
>
> 95. In 2009, five years after the wreck, The Hartford and Safeco Insurance Company' representatives increased their personal attacks upon the Plaintiffs and the Plaintiffs' counsel.
> . . .
> 98. The Hartford and Safeco Insurance Company hid defense expert Wilson' report which was favorable to the Plaintiffs.
>
> 99. The Hartford and Safeco Insurance Company lied to mediator Stu Kellner about the existence of defense expert Wilson' report.
> . . .
> 108. Unprofessionally and unreasonably, The Hartford' adjuster had inappropriate conversations with attorney Steve Carey about the value of this claim and the adjuster knew that attorney Carey was not familiar with the details or value of the claim.
> . . .
> 112. Unreasonably, at the first settlement conference in this matter, The Hartford' adjuster snuck out of the settlement conference without telling the Plaintiffs whom she left sitting at the conference and left paying for the settlement master' time.
>
> 113. Unreasonably, The Hartford' counsel, Pat Sullivan, attempted to bully and intimate [sic] with rage the Plaintiffs' counsel by spilling and throwing water at Plaintiffs' counsel.

Dkt # 26, 15–18. Lucas Nelson's affidavit, which Morin drafted and submitted with Plaintiffs' opposition to the disqualification motion, also describes actions directed at Morin:

> 35. The Hartford and Safeco attorneys attacked, ganged up on and threatened my attorney.
>
> 36. At one deposition, The Hartford's attorney, Patrick Sullivan, became so enraged that he threw a full pitcher of water at my attorney. The Hartford's insured mopped up the mess while Mr. Sullivan pouted and stormed out of the deposition room.

Dkt # 35-1, 4. Hartford disputes these allegations: "As the Court is well aware, there are two sides to every story." Dkt # 32, 8. *See also* dkt # 41, 7 and # 41-1. Hartford also contends that disqualifying Morin at this point in the litigation, before the preliminary pretrial conference and prior to any discovery, will not impose any hardship on Plaintiffs.

Plaintiffs counter that Morin may serve as trial counsel because the exceptions to Professional Conduct Rule 3.7 apply. First, Plaintiffs claim her testimony will relate only to uncontested issues concerning the motor vehicle collision, Plaintiffs' proven damages, "when and how much the Hartford and Safeco paid," and the nature and value of legal services rendered. Dkt # 35, 7–8. Second, Plaintiffs claim that any disputes regarding the underlying litigation strategy can be addressed by Plaintiffs' expert, Joe Vaccaro. At the hearing,

Morin also argued that her clients could testify to her conversations with Defendants' attorneys so her own testimony was not necessary. Finally, Plaintiffs contend Morin's disqualification would work substantial hardship on them. They repeatedly state that Hartford's motion is an attempt to block Plaintiffs' access to the judicial system and that Morin's disqualification would force them to proceed pro se or not proceed at all.

Apparently in the alternative, Plaintiffs claim that even if Morin may not "act as advocate at a trial," Mont. R. Prof. Conduct 3.7, she may still gather discovery and conduct depositions. Plaintiffs contend that "[t]he closing statement is the only advocacy moment allowed under the [Federal Rules of Civil Procedure]" and that "the taking of...depositions...is NOT an advocacy moment." Dkt # 35, 8–9 (emphasis in original). Accordingly, they offer that Plaintiffs will present their own closing statement and Morin will conduct depositions and gather other discovery.

## II. Analysis

The issue of whether an attorney should be disqualified is decided under state law, In re Co. of Los Angeles, 223 F.3d 990, 995 (9th Cir. 2000), and is governed by the applicable disciplinary rules, Optyl Eyewear Fashion Intl. Corp. v. Style Cos., Ltd., 760 F.2d 1045, 1048 (9th Cir. 1985). Additionally, the

5

District's Local Rules of Procedure apply in all cases brought in this court.

**A. Local Rule 83.5**

Local Rule 83.5 provides:

> If an attorney representing any party is examined as a witness in a case and gives testimony on the merits, the attorney may not argue the merits of the case, either to the Court or jury, except by permission of the Court, and as limited by the Court.

D. Mont. L.R. 83.5 (Jan. 1, 2012). The Court has typically applied Local Rule 83.5 narrowly, prohibiting an attorney who testifies in any capacity at trial from making the closing argument. However, Rule 83.5 may have a broader application where there is a risk that the jury will construe the attorney's participation as argument—for example, when an attorney has personal knowledge of the subject, her questions to a witness at a deposition or at trial may be construed as argument by a jury. Local Rule 83.5 does not apply to pretrial advocacy.

**B. Professional Conduct Rule 3.7**

Rule 3.7 of the Montana Rules of Professional Conduct is identical to the model rule. Compare Mont. R. Prof. Conduct 3.7 and Model R. Prof. Conduct 3.7 (ABA 2010). Rule 3.7 provides:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> > (1) the testimony relates to an uncontested issue;

> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.
>
> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

Mont. R. Prof. Conduct 3.7.

"Because of [the] potential for abuse, disqualification motions should be subjected to particularly strict judicial scrutiny." Id. at 1050 (internal quotation marks and citations omitted); see also Lisa Pumphrey v. Cincinnati Ins. Co., CV 05-14-BLG-CSO (Mar. 9, 2007 D. Mont.)(A disqualification motion "demands" "seriousness, conscientiousness, and conservative treatment.")(dkt # 32-2, 4). The movant bears the burden of showing disqualification is necessary. See State v. Worthan, 138 P.3d 805, 811 (Mont. 2006), overruled on other grounds, Whitlow v. State, 183 P.3d 861, 867 n. 4 (Mont. 2008); Northern Mont. Hosp. v. Contl. Casualty Co., CV 91-078-GF (May 14, 1993 D. Mont.)(dkt # 32-1).

The Montana Supreme Court has not discussed Rule 3.7 in detail. See Worthan, 138 P.3d at 811; Vestre v. Lambert, 817 P.2d 219, 223 (Mont. 1991); Washington v. Mont. Min. Props., Inc., 795 P.2d 460, 462 (Mont. 1990).

However, at least two United States District Courts for the District of Montana have specifically addressed how Rule 3.7 applies to an attorney in a bad faith case whose representation of the plaintiffs in the underlying suit is at issue. N. Mont. Hosp., dkt # 32-1 (Judge Hatfield); Pumphrey, dkt # 32-2 (Judge Ostby). Counsel was deemed disqualified in both cases.

Like the case at hand, Northern Montana Hospital was a bad faith insurance case in which the defendants sought to disqualify the plaintiffs' counsel under Rule 3.7. Dkt # 32-1, 1–2, 5. Judge Hatfield noted that courts have "the power to disqualify counsel when necessary to protect individual litigants . . . and to preserve the integrity of the adversary process in actions before them." Id. at 5 (internal quotation marks and citations omitted). He stated that Rule 3.7 "protect[s] the interests of the plaintiff, the interests of the adverse party, and the reputation of the legal profession" and "avoid[s] placing the advocate in the unseemly position of arguing his own credibility to the jury." Id. (citing Mannhalt v. Reed, 847 F.2d 576, 581 (9th Cir. 1988)).

> Where an attorney has observed or participated in events giving rise to facts disputed at trial, a jury may misinterpret his questions or summation as testimony conveying his own version of those events. Such misinterpretation could prove extremely prejudicial to the adverse party, since as an unsworn witness he [the attorney] would not be subject to cross-examination or explicit impeachment.

Id. (internal quotation marks and citations omitted)(brackets in the original). Even though the plaintiff in Northern Montana Hospital argued its attorneys were not likely to be necessary witnesses, the court disagreed, stating:

> Their testimony is, without a doubt, material and relevant, given the fact their strategy and decisions during the course of the underlying litigation are in issue, having directly impacted on the litigation strategy employed by Continental.... [The attorneys] are clearly the most capable witnesses to describe their roles in the underlying litigation and the rationale for their decisions and conduct therein. Consequently, whatever the events at trial, they are likely to be called as witnesses.

Id. Judge Hatfield thus held the attorneys were disqualified from representing the plaintiff in the bad faith action. Id. at 6.

Judge Ostby considered a similar case in 2007. Pumphrey, dkt # 32-2. As in Northern Montana Hospital, the defendants argued that the plaintiff's attorney would be a necessary witness at trial regarding disputed facts. Her "decisions and strategy in the underlying action directly impacted the litigation strategy employed by Defendants' insured." Id. at 3. The defendants specifically noted they would question the plaintiff's attorney regarding "how her version of events differs from that of [the attorney] who represented the insured in the underlying action" and "the time of, substance of, and the manner in which settlement offers were made, conveyed, and received in the underlying action." Id. Judge Ostby granted the disqualification motion, noting the attorneys in the underlying litigation disputed

9

the facts concerning the negotiations. She held that "Judge Hatfield [in Northern Montana Hospital] recognized that Rule 3.7 prevents an attorney from representing the plaintiff in both the underlying litigation and in a subsequent third-party bad faith action where the attorney is likely to be a necessary witness in the bad faith action." Id. at 2–3.

Other jurisdictions take a more conservative approach to Rule 3.7 than the District of Montana, and this Court agrees that a categorical exclusion from bad faith actions of the attorney who represented the plaintiff in the underlying action is too broad. The limitations considered by other courts are thus instructive in this case. For example, a district court in the District of Nevada, interpreting a similar rule, cautioned that "'[b]ecause the rule is meant to eliminate any confusion and prejudice that could result if an attorney appears before a jury as an advocate and as a witness, pretrial disqualification is generally not necessary.'" Kelly v. CSE Safeguard Ins. Co., No. 2:08-cv-00088- KJD-RJJ, 2010 WL 3613872, *2 (Sept. 8, 2010 D. Nev.)(quoting DiMartino v. 8th Jud. Dist. Ct., 66 P.3d 945, 947 (Nev. 2003)). Because Rule 3.7 can be "invoked for tactical advantage, delay, or other improper purposes," the movant must make the showing that an attorney is likely to be a necessary witness "with specificity." Id. (citing Machea Transport Co. v. Philadelphia Indemnity Co., 463 F.3d 827, 833 (8th Cir. 2006). The movant must

"demonstrate, at a minimum, that the sought after testimony is 'relevant, material and unobtainable elsewhere.'" Id. (citing World Youth Day, Inc. v. Famous Artists Merchandising Exch., Inc., 866 F.Supp. 1297, 1302 (D.Colo. 1994)). These limitations protect parties' right to select their own counsel.

**C. Application**

Here, there is sufficient basis to disqualify Morin from acting as counsel at trial and from conducting depositions. Hartford has demonstrated, with specificity, that Morin's testimony is necessary, relevant, and unobtainable elsewhere. Because she will testify, Local Rule 83.5 bars her from arguing the case at trial, unless the Court were to grant an exception. Professional Conduct Rule 3.7 bars her from acting as an advocate in this matter unless an exception applies. Hartford has demonstrated that Morin's testimony would relate to contested issues and is not limited to the "nature and value of legal services rendered in the case." Mont. R. Prof. Conduct 3.7. Finally, the Court disagrees with Morin that her disqualification at this point in the litigation would work substantial hardship on the Nelsons. Rather, the Court finds her disqualification from trying the case and conducting depositions is necessary to preserve the integrity of the process, avoid confusing jury, and protect the other interests of the parties.

**1. Morin is likely to be a necessary witness**.

Morin is likely to be a necessary witness. Plaintiffs do not dispute this in their response brief to this motion.[1] *See* dkt # 35, 7. Plaintiffs' Second Amended Complaint indicates that they intend to prove bad faith in part by offering proof of Hartford's and Safeco's alleged misconduct toward Morin. These allegations show with specificity that Morin's testimony is material, relevant, and unobtainable elsewhere. Other witnesses could probably testify about some of the allegations. For example, a third party who witnessed the alleged water-throwing incident could testify, and Plaintiffs could testify regarding any threats or intimidation against Morin that they saw first-hand. But the parties did not dispute that some conversations and interactions between Morin and Hartford agents were not witnessed by any third parties. Accordingly, Morin's testimony concerning these events is unobtainable elsewhere. Because Plaintiffs have put these experiences at issue, her testimony is also material and relevant.

In turn, Hartford plans to defend its actions and decisions by showing that it was responding directly to Morin's "decisions and strategy in the underlying

---

[1] At the hearing, Morin suggested that she is not a necessary witness because she told her clients about conversations and interactions she had with Hartford and Safeco agents. She stated Plaintiffs could testify as to those events. However, such testimony would be pure hearsay and require an exception to the Federal Rules of Evidence that is not appropriate here.

12

litigation." Dkt # 32, 7.  Morin is "clearly the most capable witnesses to describe [her] role[] in the underlying litigation and the rationale for [her] decisions and conduct therein."  N. Mont. Hosp., dkt # 32-1, 5.  While an expert witness can offer opinion evidence concerning the validity of those decisions, only Morin possesses first-hand knowledge of her strategy and reasoning.

Morin's actions and experiences in, and knowledge of, the underlying case, are critical to this litigation and concern all aspects of the case.  Thus her testimony is "relevant, material and unobtainable elsewhere."  World Youth Day, Inc., 866 F.Supp. at 1302.  As a necessary witness for both Plaintiffs and Hartford, she must be disqualified from acting as an advocate in this trial because the exceptions to Rule 3.7 do not apply.

### 2. Morin's testimony would concern contested issues and exceed the scope of permissible testimony contemplated in Rule 3.7(a)(2).

Morin's testimony would concern contested issues.  Mont. R. of Prof. Conduct 3.7(a)(1).  Hartford disputes the allegations in Plaintiffs' Second Amended Complaint that involve Morin.  It denied them in its answer, its supporting brief, its reply brief, and an affidavit accompanying the reply brief.  Likewise, Plaintiffs would certainly dispute Hartford's defense that Morin's strategy informed the insured's litigation strategy.  At trial, Hartford would seek,

like the defendants in Pumphrey, to "show [Morin's] version of events differs from that of [the attorney] who represented the insured in the underlying action." Dkt # 32-2, 3. Though Plaintiffs claim that Morin would merely be a "giver of facts," the record clearly indicates the "facts" are disputed.

Nor would Morin's testimony be limited to the "nature and value of legal services rendered." Mont. R. Prof. Conduct 3.7(a)(2). Hartford indicates it would question her regarding her litigation and negotiation strategy, her allegations that she was threatened and intimidated by Hartford and Safeco, and her alleged knowledge that Hartford and Safeco hid a defense expert's report, lied to a mediator, and engaged in inappropriate conversations with another attorney. In Northern Montana Hospital and Pumphrey, expected testimony regarding litigation strategy alone supported the disqualification of the plaintiffs' attorneys. The testimony anticipated from Morin thus exceeds the scope contemplated in Rule of Professional Conduct 3.7(a)(2).

> **3. Morin's disqualification from some aspects of advocacy at this stage in the litigation will not work "substantial hardship" on her clients under Rule of Professional Conduct 3.7(a)(3).**

Plaintiffs claim in their opposing brief and affidavits that disqualification would "deprive [them] of legal representation." See dkt # 35-1, 4. They also claim Morin is "the ONLY attorney would take [their] case or who would see it

through to the end" and "who...would stand up against the vicious insurance defense attorneys." Dkt # 35-2, 3–4 (emphasis in original). They further claim "[n]o attorney will help [them] except Ms. Morin." Id. at 4. At the hearing, Morin further stated that she has sought other counsel for her clients without success.

"Parties have a well-recognized and entirely reasonable interest in securing counsel of their choice." Murray v. Metropolitan Life Ins. Co, 583 F.3d 173, 180 (2d Cir. 2009). However, "[t]he ethical rules strike a balance between the competing interests of a client's right to choose counsel and the inconsistency of an advocate giving testimony." Optyl Eyewear, 760 F.2d at 1050. The clients' interest in securing counsel of their choice must be weighed against the interest in protecting the integrity of the process and the other interests of the parties. Pumphrey, dkt # 32-2, 4 (citation omitted); N. Mont. Hosp., dkt # 32-1, 5 (citation omitted).

At this stage in the litigation, Plaintiffs would not be substantially prejudiced by Morin's disqualification. The preliminary pretrial conference in this matter is yet to occur, trial is not yet scheduled, and discovery has not started. See World Youth Day, Inc., 866 F.Supp. at 1304 (finding the defendant would not suffer hardship if its counsel was disqualified because the plaintiff filed the disqualification motion within ten days after the defendant filed its answer and no

15

discovery had been conducted). Plaintiffs would have time to hire another attorney to conduct depositions and serve as trial counsel, and that attorney would have time to become familiar with the case. Plaintiffs' claims that no other attorney will represent them are unsupported. Many attorneys diligently and zealously represent individuals against large insurance companies.

Moreover, the integrity of the process and other interests of the parties must be weighed against any difficulty Plaintiffs might experience in finding a new attorney. Morin asks the Court to make not one, but multiple exceptions in her case to permit her to continue as counsel. First, she asks the Court to find an exception to Local Rule 83.5, Rule of Professional Conduct 3.7, and the decisions of Judge Ostby and Judge Hatfield interpreting similar cases in this District. She asks for an exception to permit her to stay in the courtroom if Defendants were to invoke Rule 615 of the Federal Rules of Evidence at trial. She asks the Court to make an exception to the rules on hearsay and to attorney-client privilege so that her clients may testify as to her explanations to them of experiences she had with Hartford and Safeco. Finally, she asks the Court to make an exception to the general principle that a party who is represented by counsel may not also participate pro se. So many exceptions would indeed be exceptional and would undermine the integrity of the process and the interests of all the parties.

**D.  Morin shall disqualified from conducting depositions as well as acting as counsel at trial.**

Plaintiffs' claim that the closing statement is a lawyer's only "advocacy moment" is unpersuasive.  The Montana Supreme Court has noted that Rule 3.7 applies to an attorney who "sat at counsel table during the hearing and actively assisted in [the client's] defense."  Washington v. Mont. Min. Props., Inc., 795 P.2d at 462–64.  In Pumphrey, Judge Ostby held that the attorney was disqualified from "taking depositions and appearing at trial as trial counsel."  Dkt # 32-2, 4.  Other courts have also disqualified advocate-witnesses from taking depositions.  E.g. World Youth Day, Inc., 866 F.Supp. at 1304 ("While . . . [generally] an attorney disqualified as a trial advocate may represent the client in pretrial activities, this proposition must yield when the pretrial activity includes obtaining evidence which, if admitted at trial, would reveal the attorney's dual role."); General Mill Supply Co. v. SCA Servs., Inc., 697 F.2d 704, 716 (6th Cir.1982)(disqualifying attorney-witness from pretrial depositions); Grant v. Kamehameha Schools/Bernice Pauahi Bishop Estate, 2009 WL 855831, *2 (Mar. 30, 2009 D. Hawaii)("disqualification for the trial proceedings alone is insufficient to remedy the conflict between the attorney's role as advocate and witness and could result in a prejudicial substitution of counsel immediately before trial").

If permitted to continue as an advocate in this case, Morin would be placed "in the unseemly position of arguing [her] own credibility to the jury." N. Mont. Hosp., dkt # 32-1, 5. She would have to cross-examine witnesses about her own conduct, and the jury could "misinterpret [her] questions or summation as testimony conveying [her] own version of those events." Id. As Judge Hatfield found, "[s]uch misinterpretation could prove extremely prejudicial to the adverse party, since as an unsworn witness [the attorney] would not be subject to cross-examination or explicit impeachment." Id. See also Murray, 583 F.3d at 178 (holding that the integrity of the judicial system is harmed when "(1) the lawyer might appear to vouch for his own credibility; (2) the lawyer's testimony might place opposing counsel in a difficult position when she has to cross-examine her lawyer-adversary and attempt to impeach his credibility; (3) some may fear that the testifying attorney is distorting the truth as a result of bias in favor of his client; and (4) when an individual assumes the role of advocate and witness both, the line between argument and evidence may be blurred, and the jury confused.") (citation omitted).

The above factors clearly apply here. Accordingly, Morin shall be disqualified from trying the case under Local Rule 83.5 and Professional Conduct Rule 3.7. She may not make opening or closing arguments or examine witnesses.

Nor may she take depositions under Rule 3.7. Allowing otherwise would risk confusing the jury and causing prejudice to her clients and the defendants. Morin may still participate as counsel or co-counsel in other ways that are consistent with the applicable rules and case law, including all pretrial activities besides depositions. If there is another lawyer at Morin's firm, that lawyer could try the case under Rule of Professional Conduct 3.7.

**C. Conclusion**

There is no evidence beyond Plaintiffs' assertions that Hartford filed this motion for tactical reasons or in bad faith, and the balance of interests supports disqualifying Morin from acting as an advocate in some aspects of this matter.

Accordingly, IT IS HEREBY ORDERED:

1. Defendant Hartford's motion to disqualify Plaintiffs' counsel (dkt # 31) is GRANTED as follows: Tracey Morin is disqualified in this case from conducting depositions, making opening and closing arguments, and examining witnesses at trial. L.R. 83.5; Mont. R. Prof. Conduct 3.7. She is subject to being deposed.

2. Plaintiffs shall notify the Court no later than Monday, **April 23, 2012**, that they have retained new or additional counsel or that they intend to proceed pro se. The parties should notify the court if there is a difficulty and explain what

the problem is and propose an answer.

    3. Depositions in this matter are STAYED until **April 23, 2012**.

    4. The Preliminary Pretrial Conference in this matter is RESCHEDULED for **May 11, 2012**, at 11:00 a.m. in the Russell Smith Courthouse in Missoula, Montana.

    Dated this 8th day of March 2012.

_____
DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT