IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

MISSOULA DIVISION

| | | |
|---|---|---|
| LUCAS NELSON and SHANNON ROBINSON NELSON, | ) ) ) | CV 11-162-M-DWM |
| Plaintiffs, | ) ) | |
| vs. | ) ) | ORDER |
| HARTFORD INSURANCE COMPANY OF THE MIDWEST, SAFECO INSURANCE COMPANY OF ILLINOIS, IRMA SULLIVAN, individually and JOHN DOES A, B and C, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

Through their common attorney, Defendants Irma Sullivan ("Sullivan") and Hartford Insurance Company of the Midwest ("Hartford") have moved to dismiss Plaintiffs' claims against Sullivan under Rule 12(b)(6) of the Federal Rules of

1

Civil Procedure. Sullivan is an insurance adjuster and employee of Hartford. Hartford and Sullivan argue that it is clear, based on the facts alleged in the Second Amended Complaint and Demand for Jury Trial (doc. 26) ("Complaint"), that Sullivan was acting in the scope and course of her employment and is therefore not personally liable to Plaintiffs. Plaintiffs counter that their Complaint "include[s] intentional woundings against the Plaintiffs by Defendant Sullivan." (Doc. 36 at 2.) They also allege that Sullivan was acting "outside the course and scope of her job duties." (*Id.* at 5.) In addition, they allege new facts in their response brief and the attached affidavits. Plaintiffs argue that the Court should consider the new allegations and treat the motion to dismiss as a motion for summary judgment.

A court has complete discretion to "reject [any material outside the pleadings] or simply not consider it." *Stein v. United Artists Corp.*, 691 F.2d 885, 889 (9th Cir. 1982); 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366, at 159 (3d ed. 2004). Here, I consider the pleadings alone under a Rule 12(b)(6) standard. Though Plaintiffs' affidavits contain detailed factual allegations, they are self-serving and lack supporting evidence. *United States v. Arango*, --- F.3d ----, 2012 WL 89184, *4 (9th Cir. 2012) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is

insufficient to create a genuine issue of material fact.")(quoting *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir.1997)). Additionally, summary judgment would be premature; discovery has not yet begun and depositions are stayed. Finally, the pending motion can be decided on the pleadings alone. Because I find in favor of the plaintiffs, an analysis under Rule 12(b)(6) does not prejudice them.

## A.  Motion to dismiss standard

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 260 F.3d 729, 732 (9th Cir. 2001). A claim should be dismissed if the plaintiffs fail to allege sufficient facts to "state a claim to relief that is plausible on its face." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–1242 (9th Cir. 2011); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). A court must accept all factual allegations in the complaint, construed in the light most favorable to the plaintiffs, and draw all reasonable inferences in the plaintiffs' favor. *Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949–50. As the Supreme Court has explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right

to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

**B. Factual background**

In their Complaint, Plaintiffs allege that Plaintiff Lucas Nelson was hit by a vehicle insured by Hartford and driven by a person insured by Safeco. (Doc. 26 at ¶ 9.) "Both Hartford and Safeco, on behalf of their insureds, denied responsibility for the wreck and Lucas' devastating injuries." (*Id.* at ¶ 14.)

Sullivan is the only Hartford insurance adjuster mentioned in the Complaint.[1] Plaintiffs allege that she was "acting within the course and scope of her employment while adjusting the Plaintiffs' claims." (*Id.* at ¶ 25.) They also allege, specific to Sullivan:

> 78. Defendants The Hartford and Safeco Insurance Company, along with adjuster Irma Sullivan, had all of Plaintiff Lucas Nelson's medical records and doctor reports as well as the defense expert reports while denying the Plaintiffs' claims.
>
> ...

---

[1] In their brief, Hartford and Sullivan state that "Plaintiffs only specifically mention Ms. Sullivan once in the Amended Complaint, when they allege that she was an agent of Hartford." (Doc. 34, 4.) However, they ignore several allegations in the Complaint that refer to "the Hartford adjuster" or to the Defendants, collectively. (*See* doc. 26 at ¶¶ 78, 95, 105–08, 111–12, 152, 156, 169, 171.)

105. "Unprofessionally and unreasonably, The Hartford adjuster, Irma Sullivan, attempted to act as an occupational expert in directing Plaintiff Lucas Nelson's vocational direction."

106. Unprofessionally and unreasonably, The Hartford adjuster acted as a medical doctor in making determinations of Plaintiff Lucas Nelson' medical needs.

107. Unprofessionally and unreasonably, The Hartford's adjuster maligned the Plaintiffs with allegations of faking, lying, laziness and drug addiction.

108. Unprofessionally and unreasonably, The Hartford's adjuster had inappropriate conversations with attorney Steve Carey about the value of this claim and the adjuster knew that attorney Carey was not familiar with the details or value of the claim.

...

111. Unreasonably, at the first settlement conference in this matter, The Hartford's adjuster told many other potential financial contributors that The Hartford would be handling the matter, the [sic] precluding those parties (namely Safeco Insurance Company and Defendant Mary Gossi) from contributing financially.

112. Unreasonably, at the first settlement conference in this matter, The Hartford's adjuster snuck out of the settlement conference without telling the Plaintiffs whom she left sitting at the conference and left paying for the settlement master's time.

(*Id.*) Possibly referring to Sullivan, Plaintiffs also allege: "In 2009, five years after the wreck, The Hartford and Safeco Insurance Company's representatives increased their personal attacks upon the Plaintiffs and the Plaintiffs' counsel."

(*Id.* at ¶ 95.) Other claims in the Complaint ascribe actions to Hartford without indicating who individually took the actions.

**C. Personal liability within the scope and course of employment**

Hartford and Sullivan misinterpret Montana law in arguing that an agent can only be subject to "personal liability if the individual *personally*, <u>outside the scope of his employment</u>, commits a tort." (Doc. 34 at 6 (underline emphasis added).) Rather, personal liability can be imposed "for acts in the course of the agency...when the agent's acts are wrongful in their nature." Mont. Code Ann. § 28-10-702(3). Thus, Plaintiffs' allegation that Sullivan was acting in the scope and course of her employment (doc. 26 at ¶ 25) does not preclude a finding of personal liability.

"Generally, employees and agents of a corporation are shielded from personal liability for acts taken on behalf of the corporation." *Sherner v. Natl. Loss Control Servs. Corp.*, 124 P.3d 150, 155 (Mont. 2005) (citation omitted). However, an agent may be held personally liable where "the agent was personally negligent or that agent's actions were tortious in nature." *Id.* (quoting *Crystal Springs Trout Co. v. First St. Bank of Froid*, 732 P.2d 819, 823 (Mont. 1987)). There is no "bright line between tortious conduct committed by a corporate agent that subjects him to personal liability, and conduct which may cause another party

6

damage, but is nonetheless not actionable in a personal sense due to the corporate presence." *Ammondson v. Northwestern Corp.*, 220 P.3d 1, 22 (Mont. 2009). "The personal nature of the agent's actions forms the narrow exception to the general policy that officers and agents of a corporation must be shielded from personal liability for acts taken on behalf of the corporation." *Crystal Springs Trout Co.*, 732 P.2d at 823.

Actions that are "motivated and taken in the furtherance of corporate purposes, policies and interests" are usually protected by the corporate shield doctrine. *Phillips v. Mont. Ed. Assn.*, 610 P.2d 154, 158 (Mont. 1980); *see also Bottrell v. Am. Bank*, 773 P.2d 694, 708–09 (1989). But personal liability attaches where a tort is committed "for private benefit, or because of personal feelings and purposes relative to a third party," *Phillips*, 610 P.2d at 158, where there is malice, *id.*, or if the action was taken "with the intent to harm the plaintiff," *Bottrell*, 773 P.2d at 708–09. Knowing, active involvement in tortious conduct also may give rise to personal liability. *See Castro v. ExxonMobil Oil Corp.*, 2012 WL 523635, *3 (Feb. 16, 2012 D. Mont.); *Williams v. DeVinney*, 856 P.2d 546, 550 (Mont. 1993).

As the Montana Supreme Court has recognized and the parties' arguments suggest, there are competing public policy considerations at stake:

> One public policy consideration is that the officers, directors, employees and agents of a corporation must be shielded from personal liability for acts taken on behalf of the corporation, including the breaching of contracts in furtherance of corporate goals, policies, and business interests. This corporate shield is needed in order to allow corporations to effectively function. A competing public policy consideration is that individual corporate agents, employees, directors and officers should not be allowed to commit torts at will, and then be allowed to hide behind the corporate veil in order to escape accountability for those torts.

*Phillips*, 610 P.2d at 157–58.

**D. Based on the face of the Complaint, Plaintiffs have sufficiently alleged that Sullivan was personally liable with regard to their bad faith insurance claims.**

It appears from the pleadings that Sullivan was acting within the scope and course of her employment at Hartford at all times alleged in the Complaint. Plaintiffs specifically allege that she was "acting within the course and scope of her employment while adjusting the Plaintiffs' claims." (Doc. 26 at ¶ 25). Also, all the alleged bad faith took place during the investigation and litigation of Plaintiffs' insurance claim.

Plaintiffs do not allege that Sullivan had a personal financial interest at stake, *Williams*, 856 P.2d 546, or that she had a personal relationship with Plaintiffs prior to working on their claims as Hartford's insurance adjuster, *Crystal Springs Trout Co.*, 732 P.2d at 823. She does not appear from the pleadings to have been pursuing her own interests, and Plaintiffs do not allege she acted

contrary to the best interests of the corporation. *Kuhns v. Scott*, 853 P.2d 1200,1204 (Mont. 1993).

However, the Complaint does suggest that even if her conduct took place within the scope of her employment, Sullivan may have been "personally negligent or that [her] actions were tortious in nature." *Crystal Springs Trout Co.*, 732 P.2d at 823; *Phillips*, 610 P.2d at 158 (citations omitted). Plaintiffs allege she accused them of "faking, lying, laziness, and drug addiction." (Doc. 26 at ¶ 107). These alleged statements are plausibly "intentional and very personal," *Crystal Springs Trout Co.*, 732 P.2d at 823, and could form a reasonable basis for Plaintiffs' legal conclusion that Sullivan acted "with malice," (doc. 26 at ¶¶ 152, 156, 171). Evidence of active involvement in a tortious decision to delay settling Plaintiffs' claims (*id.* at ¶¶ 101, 102, 104, 169) may also give rise to personal liability. *Castro*, 2012 WL 523635, *3. Finally, other allegations, taken as true and read in the light most favorable to Plaintiffs, suggest fraudulent conduct. (Doc. 26 at ¶¶ 111, 112.) As the sole Hartford adjuster alleged to be working on Plaintiffs' claim, it is also plausible Sullivan was the individual who allegedly "hid" a defense expert's report that was favorable to Plaintiffs. (*Id.* at ¶¶ 98–99.) *See Ammondson*, 220 P.3d at 24 (Rice, J., dissenting)(citing *Crystal Springs Trout Co.*, 732 P.2d at 822, 823; *Poulsen v. Treasure St. Indus.*, 626 P.2d 822, 824–25

(Mont. 1981)). The Complaint thus alleges "enough fact to raise a reasonable expectation that discovery will reveal evidence," *Twombly*, 550 U.S. at 556, that Sullivan acted maliciously, tortiously, or fraudulently. It is at least plausible that Plaintiffs could prove a set of facts under which Sullivan would be personally liable.

## IV. Conclusion

Given that a complaint's factual allegations need not be specific, the above allegations are sufficient "to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

Accordingly, IT IS HEREBY ORDERED that Hartford's and Sullivan's motion (dkt # 33) is DENIED. Subject to proof, Plaintiffs have adequately alleged that Sullivan is personally liable with regard to their claims.

Dated this 20th day of March 2012.

DONALD W. MOLLOY, DISTRICT JUDGE
UNITED STATES DISTRICT COURT